**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| MAURICE GRAVES, #208580 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No.: 3:09-CV-00540-PMD |
| v. | ) | |
| | ) | |
| A.J. PADULA, | ) | **ORDER** |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court on Petitioner Maurice Graves's ("Petitioner") *pro se* application for writ of habeas corpus filed in this court pursuant to 28 U.S.C. § 2254 on February 27, 2009.[1] On June 17, 2009, Respondent filed a return and motion for summary judgment. Petitioner filed a "Motion to Voluntary Withdrawal" on August 5, 2009 and filed a response in opposition to Respondent's motion for summary judgment on August 14, 2009. On September 11, 2009, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, the Magistrate Judge entered a Report and Recommendation ("R&R") recommending that Petitioner's motion to voluntary dismiss his case be denied, Respondent's motion for summary judgment be granted, and Petitioner's habeas corpus petition be dismissed. Petitioner filed an Objection to the R&R on September 24, 2009. Having reviewed the entire record, including Petitioner's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

---
[1] Filing date per *Houston v. Lack*, 487 U.S. 266, 270-76 (1988).

1

## BACKGROUND

Petitioner is currently confined at the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC") and is serving a life sentence (without parole) for first degree burglary. On the night of August 23, 2002, Petitioner broke into the residence of Warren Davis, an off-duty Sumter police officer. Once inside Davis's house, Petitioner searched through Davis's wallet, took his service weapon, and ate some ice cream sandwiches from the kitchen. Davis awakened, confronted Petitioner, and held him at gunpoint until officers arrived. At the police station, Petitioner gave a statement in which he admitted breaking into the officer's house because he thought no one was home. Petitioner was indicted in February 2003 in Sumter County for First Degree Burglary and Purse Snatching (03-GS-43-159). Petitioner was represented by Lauren Ferrari Stevens, and on November 19, 2003, was found guilty by a jury of First Degree Burglary. Petitioner was sentenced to term of life imprisonment without the possibility of parole.

Petitioner filed a timely appeal. The South Carolina Office of Appellate Defense filed an *Anders*[2] brief raising the following issue:

> Whether the court erred by ruling that even if the police told appellant he was facing a life sentence when they went to interview him that appellant's confession was nonetheless voluntarily tendered because appellant could have received a life sentence for burglary in the first degree, since appellant testified he was told the police would try "to get me to receive a life sentence," if he did not cooperate, and this threat rendered appellant's confession involuntary?

Petitioner also filed a *pro se* brief in which he raised the following additional issues:

1. Appellant was convicted and sentenced to burglary in the first degree § 16-11-311 code of laws to life without parole which this statute is unconstitutional in that it's application and affect [sic] works as a mandatory presumption of intent from without consent and entry elements of statu[t]e, and its burden-shifting, therefore, the petitioner's jury to find

---
[2] *Anders v. California,* 386 U.S. 738 (1967).

> intent to commit a crime unless the petitioner could show that he had consent and entry was not unlawful.

2. Appellant's conviction and sentence is unconstitutionally applied in that the application of the provisions of 1996 Act 83, Bill R. 136, M3096, that is unconstitutional act, in that the General Assembly exceeded its constitutional authority in violation of S.C. Constitution Article III, § 17 and Art. II, § 2, Art. I, §§ 2 & 3 and the Fourteenth Amendment to the United States Constitution.

On August 17, 2005, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's motion to be relieved. *State v. Graves,* No. 2005-UP-489 (S.C. Ct. App. Aug. 17, 2005). The Remittitur was issued on September 2, 2005.

In May 2005, Petitioner filed an application for post-conviction relief ("APCR") in the court of common pleas for the third judicial circuit. *Graves v. State of South Carolina*, No. 06-GS-43-805; (R. p. 143). Petitioner listed ineffective assistance of counsel as his only ground for relief. On March 19, 2007, an evidentiary hearing was held at which Petitioner was represented by Charles T. Brooks, III, Esquire. (R. pp. 174-207). On August 14, 2007, the PCR judge entered a written order denying the petition. (R. pp. 208-214).

Petitioner timely filed an appeal of the denial of his APCR. Petitioner was represented by Celia Robinson, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a petition raising the following issue:

> Did the PCR judge err in denying relief where petitioner's trial counsel provided ineffective assistance by not seeing or consulting with petitioner prior to a half an hour before his trial commenced, by not attempting to engage in plea negotiations in a timely fashion, by not making a motion for a continuance, and by making no motion in response to the inclusion in the indictment of a wholly unrelated charge, all of which prejudiced petitioner's right to counsel at trial and during plea negotiations and denied him his right to a fair prosecution?

On December 17, 2008, the South Carolina Supreme Court denied the Petition and issued the Remittitur on January 5, 2009.

Petitioner filed his *pro se* habeas petition on February 27, 2009, in which he asserts the following grounds for relief:

> **Ground One:** Trial was unfair if the accused is denied counsel at a critical stage of the trial, which the Defendant was. Petitioner claims he was violated of his United States constitution, sixth amendment, right to effective assistance of counsel.
>
> Supporting Facts**:** Petitioner had no communication with his appointed counsel for over a year and a half. Petitioner met his counsel 20 minutes before trial. Trial counsel told Petitioner during their 20 minute discussion that, "she has no defense, and before you leave court today you will have a life sentence." Trial counsel testified that she did not interview witnesses or victim in this case. Petitioner never new [sic] he ever had a[n] attorney until the day of trial. Trial attorney didn'tt [sic] knew [sic] which charge petitioner was facing until the day of trial, because petitioner had several burglary charges. . . .
>
> **Ground Two:** The presented indictment violated Petitioner's sixth and fourteenth amendment right to due process.
>
> Supporting Facts: The PCR Judge erred in denying relief where Petitioner's trial counsel raised no objection to the inclusion of a wholly unrelated charge of purse snatching being included in his burglary indictment at his burglary trial. The indictment in Petitioner's burglary prosecution is titled, "Indictment for Burglary (1st Degree) and Purse Snatching." Count Two of the Indictment alleges, "that Maurice Graves did in Sumter County on or about August 6, 2002, violate section 16-13-150 or the code of laws of South Carolina (1976) as amended in that he did snatch suddenly and carry away the purse of Renee Mack.

On June 17, 2009, Respondent filed a return and motion for summary judgment. Petitioner filed a "Motion to Voluntary Withdrawal" on August 5, 2009 and filed a response in opposition to Respondent's motion for summary judgment on August 14, 2009. On September 11, 2009, the Magistrate Judge recommended to this Court that Petitioner's motion to voluntary dismiss his case be denied, Respondent's motion for summary judgment be granted, and Petitioner's habeas corpus petition be dismissed.

# STANDARD OF REVIEW

## A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

## B. Section 2254 Petitions

The court may grant habeas relief with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). As "a determination of a factual issue made by a State court shall be presumed to be correct," Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362 (2000).

**C.**     **Magistrate Judge's R&R**

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.*

## ANALYSIS

Petitioner claims that his trial counsel was ineffective in failing to meet with Petitioner at any point before the day of trial, failing to negotiate a plea, and failing to develop a defense based on Petitioner's mental condition. At the PCR hearing, Petitioner testified that his trial counsel was an appointed public defender. He testified that after his arrest for burglary in August of 2002, he spent a few weeks in the Sumter County detention center. (R. p. 178.) Petitioner was then sent to safekeeping in Lee County. Petitioner was at the Lee County Correctional facility for approximately seventeen months. (Id.) During that period of almost a year and a half, Petitioner testified that he had no communication with his appointed counsel. (Id.) Petitioner testified that he did not know who his attorney was and that the first time he met with his attorney was on November 18, 2003, "about 15 or 20 minutes before" he proceeded to a

6

trial where the possible penalty was life without the possibility of parole. (Id.) Petitioner testified that during this introductory meeting, which took place within a half an hour of his trial commencing, his attorney "introduced herself and said that she was my trial attorney and that we was [sic] going to trial today." (R. p. 179.) Petitioner testified that he asked his trial counsel if she had talked to the witness and that she said she had not. (Id.) Petitioner testified, "she was telling me that before I—before I leave here today that I will have a life sentence and that she has no defense for me in my case and that was pretty much it." (Id.) According to Petitioner, counsel "didn't actually know which charge that we was [sic] going to trial for because I had several pending charges besides the burglary." (Id.) Petitioner testified that if his trial attorney had investigated the case and then engaged in the plea negotiation process, he would have accepted a plea to twenty-five or thirty years of incarceration. (R. p. 180.) Petitioner testified that counsel should have had him evaluated to determine whether or not he was competent to stand trial "because looking back now, and when I—she told me all the things that took place on the night of the crime, I didn't really recall a lot of stuff that took place, and they said during—they said that I was in this person's house and—with no shirt, off, and I was partly nude. Honestly, I don't recall all of that. I think that would have been a defense in my favor." (R. p. 181).

Counsel testified at the PCR hearing that she was appointed on April 22, 2003; however, she could not recall how long Petitioner was incarcerated prior to her appointment. (R. p. 187.) Counsel testified that she sent a letter to Sumter County Correctional Institution but that it was returned, probably because Petitioner had been sent to Lee County before the letter was mailed. (Id.) Counsel testified that she did not visit Petitioner during the year and a half he was held at Lee County. (R. p. 186.) Petitioner was in Lee County for seventeen months; however, his

7

counsel testified that she first became aware that her client was at Lee on the day of his trial. (R. p. 187.) Counsel testified that she first met Petitioner "when they brought him the day of the trial in his SCDC uniform." (Id.) Counsel testified that Petitioner went to trial in his SCDC uniform. (Id.) She also testified that she did not recall how long prior to trial the State's notice of intent to seek LWOP was served. (R. p. 186.) She also testified that there were no plea negotiations in this case: "I asked Mr. Connor if there was anything we could do and he said 'No. We're going to trial on burglary first.'" (R. p. 187.) Counsel testified that she asked Mr. Connor about the case after receiving an October 17, 2003 letter indicating that the case was possibly coming up for trial (fourteen months after Petitioner's August 2002 arrest and six months after counsel's April 2003 appointment as counsel). (R. p. 188.) Counsel testified that during the course of her investigation she did not talk to any witnesses or the victim, but that she read the discovery and prepared a defense that Petitioner did not commit burglary because he did not have the intent to commit a crime once he was in the home. (R. pp. 189-90.) Counsel also testified that she did not consider a temporary insanity defense because Petitioner told her that he was on drugs at the time and that was not a viable defense to the charge. (R. p. 193.) Counsel testified that she discussed the charges, elements, and possible defenses with Petitioner. (R. pp. 188-90.) Counsel also testified that she discussed with Petitioner his right to testify and the pros and cons of doing so. (R. p. 190.)

      The PCR court found that counsel's testimony was credible and that Petitioner's testimony was not credible. (R. p. 211.) The PCR court also found that Petitioner failed to carry his burden of showing that counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney under *Strickland v. Washington,* 466 U.S. 668 (1984). The PCR court found that "trial counsel's reasons for not presenting an intoxication

8

defense or pursuing a mental evaluation was [sic] a matter of trial strategy and not ineffective assistance of counsel. (Id.) The PCR judge also found that counsel attempted to pursue a plea deal; however, the State was unwilling to negotiate. (Id.) Further, the PCR court found that even if Petitioner has satisfied his burden of showing that counsel's representation was deficient for failing to investigate and prepare for Petitioner's case, Petitioner has nonetheless failed to prove that he was prejudiced by counsel's deficient performance. (R. pp. 211-12.) Based on the findings listed above, the PCR judge concluded that Petitioner had failed to carry his burden of proving his claim of ineffective assistance of counsel and, therefore, dismissed Petitioner's APCR. The PCR court also analyzed Petitioner's indictment claim as an allegation that the circuit court lacked subject matter jurisdiction and found that because circuit courts have subject matter jurisdiction to try criminal matters, Petitioner's faulty indictment claim is without merit. (R. p. 212).

The Magistrate Judge found that the PCR judge properly applied Federal law to Petitioner's claim and did not make an unreasonable determination of the facts in light of the evidence presented at the PCR trial. The Magistrate Judge found that Petitioner has failed to establish that his plea counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). The Magistrate Judge found that even though counsel did not speak with Petitioner until the day of trial, counsel met with Petitioner and "discussed the charges, elements and possible defenses" with him, explaining that voluntary intoxication was not a defense. R&R p. 7 (citing R. p. 211.) The Magistrate Judge also noted that Petitioner had failed to show that he was prejudiced by counsel's limited communication because Petitioner was arrested inside the victim's house and because counsel was still able to review the discovery and present a defense. Id. As to Petitioner's claim that counsel was ineffective in failing to investigate and present an

insanity defense, the Magistrate Judge found that Petitioner presented no evidence of his mental condition at the PCR hearing and, therefore, found that this claim was meritless. R&R p. 8. Additionally, as to Petitioner's claim that his counsel was ineffective in failing to obtain a plea bargain, the Magistrate Judge also found that "[n]o defendant is entitled to a plea bargain. The PCR court found as fact that counsel attempted to negotiate a deal, but her efforts were rejected by the State. The State had a strong case against [Petitioner] and was unwilling to negotiate a plea for a sentence of less than life without parole." Id. Finally, as to Petitioner's faulty indictment claim, the Magistrate Judge found that the claim is procedurally barred and that because the record shows that the purse snatching charge was not mentioned during the trial, there was no violation of Petitioner's rights. Id.

Petitioner's main objection is that both the PCR court and the Magistrate Judge improperly analyzed his claim under the test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), when the claim should have been analyzed under *United States v. Cronic,* 466 U.S. 648 (1984). Under *Strickland,* in order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by his counsel's deficient performance. *Strickland,* 466 U.S. at 687. With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to satisfy the second prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Using this test, both the PCR court and the Magistrate Judge found that Petitioner had failed to show that there was a reasonable probability

that, but for counsel's alleged deficient performance, the result of the proceeding would have been different. Specifically, both the PCR court and the Magistrate Judge found that the State had an almost airtight case against Petitioner being that he was arrested inside the home of the victim. *See* R&R p. 7; R. p. 211. Additionally, the PCR court and the Magistrate Judge noted that Petitioner's allegation that he might have had a temporary insanity defense was without merit because Petitioner told his counsel that he was on drugs and that voluntary intoxication is not a defense. After reviewing the entire record, the Court agrees with both the PCR Court and the Magistrate Judge in that even if counsel's performance was deficient, Petitioner has failed to show that he was prejudiced by counsel's deficient performance. Petitioner was found inside of the off-duty police officer's home in the middle of the night with a weapon and searching through the victim's property, voluntary intoxication is not a viable defense, and the State was unwilling to offer Petitioner a plea bargain because it was Petitioner's third serious offense and the State had an airtight case against him. Therefore, the Court finds that Petitioner has failed to meet his burden of demonstrating prejudice as required under the *Strickland* test for ineffective assistance of counsel.

However, under an opinion issued the same day as *Strickland*—*United States v. Cronic*, 466 U.S. 648 (1984)—in rare instances, a court may forgo an individual inquiry into whether but for counsel's deficient performance, the result of the proceeding would have been different, and may presume prejudice. In *Cronic*, the Supreme Court identified three distinct situations in which prejudice may be presumed. "First, prejudice is presumed when the defendant is completely denied counsel 'at a critical stage of his trial.'" *Glover v. Miro*, 262 F.3d 268, 275 (4th Cir. 2001) (citing *Cronic,* 466 U.S. at 659). "Second, per-se prejudice occurs if there has been a constructive denial of counsel. This happens when a lawyer 'entirely fails to subject the

11

prosecution's case to meaningful adversarial testing,' thus making 'the adversary process itself presumptively unreliable.'" *Id.* "Third, the Court identified certain instances 'when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance of counsel is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of trial.'" *Id.* According to the Fourth Circuit, "a finding of per-se prejudice under any of these three prongs is 'an extremely high showing for a criminal defendant to make.'" *Glover,* 262 F.3d at 275 (citing *Brown v. French,* 147 F.3d 307, 313 (4th Cir. 1998)).

Petitioner argues that his claim of ineffective assistance comes under the first prong of *Cronic* because he was completely denied counsel at a critical stage. It is undisputed that counsel had no communication through any means with Petitioner until approximately 20 minutes before trial. Petitioner testified that he was in jail for approximately 17 months without any communication with his counsel or even knowing the identity of his counsel. Petitioner claims that under these facts, he was effectively denied counsel at a critical stage of the proceeding.

As part of his objection, Petitioner points to *Mitchell v. Mason,* 325 F.3d 732 (6th Cir. 2003), wherein the Sixth Circuit Court of Appeals applied the first prong of *Cronic* to find that a habeas petitioner had been denied effective assistance of counsel. In a subsequent case concerning the absence of counsel at a critical stage, the Sixth Circuit describes their decision in *Mitchell* as follows:

> *Mitchell v. Mason,* 325 F.3d 732 (6th Cir.2003), signaled a development in our approach to the [critical stage] doctrine now under consideration. The case designated a broad time period, the season of pretrial investigation and preparation, as a critical stage. Habeas petitioner Charlie Lee Mitchell had been appointed an unusually terrible trial lawyer named Gerald K. Evelyn. This attorney represented Mitchell at preliminary examination and a bail hearing. His

12

law license was then suspended for a little over a month. His poor (non-) performance continued at trial, where he did not make an opening argument. *Id. at 735.* Before the trial, Mitchell complained in six letters addressed to the trial court that Evelyn had never visited him in prison nor consulted with him in court. This claim was supported by witness testimony. The trial court denied Mitchell's motion to withdraw Evelyn as counsel. *Id. at 736.* The same judge ruled, at a special state court hearing convened for the purpose of adducing evidence on an ineffective assistance of counsel claim, that Mitchell had not shown prejudice and that he had benefitted from effective assistance. *Ibid.* The district court granted Mitchell's federal habeas petition, and we affirmed this grant in *Mitchell v. Mason,* 257 F.3d 554 (6th Cir.2001). In a one-line order, the Supreme Court vacated our decision and remanded to our court for further review in light of its recent decision in *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (discussed immediately *infra* ). *Mason v. Mitchell,* 536 U.S. 901, 122 S.Ct. 2354, 153 L.Ed.2d 177 (2002). Upon remand, and in light of Bell, we reaffirmed the district court's grant of Mitchell's habeas petition. 325 F.3d at 737. We held that Evelyn's total absence during the period of his suspension from practice, his near-total absence during the six additional months of his representation, and the fact that he spent only six minutes with Mitchell "in the bullpen," constituted a "complete denial of counsel during a critical stage of the proceedings." 325 F.3d at 741. We then characterized the entire "pre-trial period" as "indeed a critical stage." *Id. at 742.*

*Van v. Jones,* 475 F.3d 292 (6th Cir. 2007). The *Mitchell* court noted that if mere preparation time is the issue, then a claim of ineffective assistance of counsel is properly analyzed under *Strickland. Mitchell,* 325 F.3d at 742. However, the *Mitchell* case was not only about a short preparation time for trial but was about "the absence of counsel extended throughout the pre-trial period; not only was Mitchell's counsel suspended from the practice of law for the month immediately preceding trial, but Mitchell's counsel also met with Mitchell for no more than six minutes over the seven-month period before trial, and the trial court repeatedly ignored Mitchell's entreaties for counsel who would properly prepare a defense." *Id.*

The facts of Petitioner's case, however, differ from *Mitchell* in that Petitioner's counsel was never suspended from the practice of law, made a thorough opening statement, and met with Petitioner, not in the bullpen, but for at least 20 minutes before trial to discuss the charges, possible defenses, and his right to testify. Additionally, there is no controlling case law in this

circuit holding that the entire pre-trial period is a "critical stage" for purposes of evaluating ineffective assistance of counsel under *Cronic*. Further, in cases such as *Praylow v. Martin*, 761 F.2d 179 (4th Cir. 1985), the Fourth Circuit Court of Appeals has held that appointment of counsel the day of trial does not justify a finding of per-se prejudice under *Cronic.* According to the *Praylow* Court, "nowhere does the Supreme Court suggest that late appointment of counsel justifies a presumption of ineffective assistance of counsel. We conclude that the appointment of counsel on the same day that Praylow pleaded guilty does not give rise to a presumption of ineffective assistance of counsel and that some showing of actual prejudice is required." *Praylow*, 761 F.2d at 183; *see also Glover v. Miro,* 262 F.3d 268 (4th Cir. 2001) (finding *Cronic* not applicable where counsel was appointed two days before trial and had between fifty and sixty other cases). Additionally, in *Chambers v. Maroney*, 399 U.S. 42 (1970), "the Supreme Court held that it would not presume prejudice where counsel appeared in the case only a few minutes before trial." *Glover,* 262 F.3d at 279. Therefore, in light of the absence of controlling case law finding the pre-trial period as a critical stage and in light of controlling case law holding that late appointment of counsel does not justify a finding of per-se prejudice, it cannot be said that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, the Court finds Petitioner's objection to be without merit and dismisses Petitioner's ineffective assistance of counsel claim because Petitioner has failed to demonstrate prejudice as required by *Strickland* and as discussed above.

Lastly, Petitioner objects to the Magistrate Judge's recommendation that Petitioner's second ground for relief relating to the indictment is procedurally barred from review. As

discussed above, Graves asserts that his Sixth and Fourteenth Amendment rights were violated because a purse snatching charge was included in the burglary indictment. The Magistrate Judge found that "this claim is procedurally barred. In any event, the record shows that the purse snatch charge was not mentioned during trial. Thus, there was no violation of Graves' rights." R&R, p. 8. The Court finds that after reviewing the record the claim is procedurally barred and that Petitioner's objection is without merit. Petitioner raised the indictment issue in his APCR and the PCR judge addressed the issue as a claim for lack of subject matter jurisdiction in his written PCR order. The PCR court found that "defects in the indictment do not affect subject matter jurisdiction" and, therefore, dismissed this claim. (R. pp. 212-13.) The PCR court did not address the indictment claim as a part of Petitioner's ineffective assistance of counsel claim, and Petitioner failed to file a Rule 59(e) motion to have the PCR court address the claim as one of ineffective assistance of counsel. Petitioner then failed to properly raise the indictment issue on appeal. Therefore, the Court agrees with the Magistrate Judge that this claim is procedurally barred from review.

Thus, after reviewing the record, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law, and the court adopts the R&R and fully incorporates it into this Order.

## CERTIFICATE OF APPEALABILITY

On December 1, 2009, the Rules Governing Section 2254 Cases in the United States District Courts were amended to require a District Court to issue or deny a certificate of appealability when a final ruling on a habeas petition is issued. The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

15

> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683 (4th. Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has been met. As discussed above, it is an open question of law in this circuit as to whether the entire pre-trial period, without any formal court appearances, is a "critical stage" for purposes of analyzing an ineffective assistance of counsel claim under *United States v. Cronic,* 466 U.S. 648 (1984). It is also an open question as to whether the failure of counsel to consult with Petitioner throughout the entire pre-trial period justifies a finding of per-se prejudice under *Cronic.* Further, as demonstrated by the Sixth Circuit Court of Appeal's holding in *Mitchell v. Mason,* 325 F.3d 732 (6th Cir. 2003), reasonable jurists have found the pre-trial stage without formal court appearances to be a critical stage and that absence of counsel throughout the entire pre-trial period justifies a finding of per-se prejudice under *Cronic.* The Court finds that Petitioner has made a substantial showing of the denial of a constitutional right and that reasonable jurists would find this Court's assessment of Petitioner's constitutional claims to be debatable or wrong. Therefore, a certificate of appealability is granted as to Petitioner's claim that he was denied counsel at a critical stage of the proceeding and therefore is entitled to a per-se finding of prejudice under *Cronic.*

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Respondent's motion for summary judgment is **GRANTED,** Petitioner's motion to voluntary withdraw is **DENIED,** and a certificate of appealability is **GRANTED.**

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**March 30, 2010**
**Charleston, SC**